# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | **CRIMINAL ACTION NO. 06-83** |
| v. | : | |
| | : | **CIVIL ACTION NO. 11-7006** |
| MARK LAWRENCE, | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

RUFE, J.                                                                SEPTEMBER 30, 2013

Before the Court is Defendant Mark Lawrence's Motion to Vacate, Set Aside, or Correct

his Sentence Pursuant to 28 U.S.C. § 2255. For reasons that follow, the Court finds that the

grounds pursuant to which Defendant brings his Motion lack merit. Consequently, the Court will

deny the Motion without an evidentiary hearing.[1]

## I.    BACKGROUND

On February 28, 2006, a grand jury indicted Defendant for one count of being a felon in

possession of a firearm.[2] On April 10, 2007, a superseding indictment charged three additional

counts of violation of the same statute. Defendant was thereafter tried by jury beginning June 12,

2007, and was convicted of three out of the four counts on June 14, 2007.

---

[1] "In evaluating a federal habeas petition, a District Court must hold an evidentiary hearing
'[u]nless the motion and the files and records of the case conclusively show that the prisoner is
entitled to no relief.'" *United States v. Kenley*, No. 10-1259, 2011 WL 3211508, at *1 (3d Cir.
July 29, 2011). If the record as a whole "conclusively show[s] that the prisoner is entitled to no
relief," a court is not required to hold an evidentiary hearing. *United States v. Dawson*, 857 F.2d
923, 927 (3d Cir. 1988) (quoting *Government of the Virgin Islands v. Bradshaw*, 726 F.2d 115,
117 (3d Cir. 1984)) (internal quotation marks omitted). Here, the Court finds that the record as a
whole conclusively establishes that Defendant is entitled to no relief. Accordingly, the Court will
deny the Motion without an evidentiary hearing.
[2] 18 U.S.C. § 922(g)(1).

From the indictment, the evidence introduced at trial, and the jury verdict, it appears that the jury found the following facts.[3] On December 7, 2005, officers of the Philadelphia Police Department were patrolling near Mr. Lawrence's residence at 1017 45th Street, Philadelphia, PA, in the Eastern District of Pennsylvania.[4] As they passed by, Mr. Lawrence, driving a white Dodge Magnum, sped out from a parking space in front of the building.[5] The police officers gave chase, and Mr. Lawrence continued to speed through busy intersections without regard to traffic laws.[6] Mr. Lawrence crashed into a parked car near 48th Street and Merion Avenue,[7] abandoned his car, and was apprehended shortly thereafter by police officers on foot.[8]

After Mr. Lawrence was captured, Detective Joseph McDermott, one of the policemen who chased Mr. Lawrence, obtained the consent of Dione Mitchell to search a closet at the home she shared with Mr. Lawrence.[9] The closet contained three firearms, a Beretta 9mm pistol, a Taurus .25 caliber pistol, and a Beretta .40 caliber pistol.[10] Ms. Mitchell told Det. McDermott that she had purchased the Taurus for herself and the .40 caliber Beretta for Mr. Lawrence on November 21, 2005.[11] The 9mm Beretta was registered to Eric Connor, an acquaintance of Mr. Lawrence.[12] From these facts, the jury could have reasonably concluded that Mr. Lawrence obtained possession of the 9mm Beretta from Mr. Connor and the Taurus from Ms. Mitchell, and

---

[3] These facts are construed so as to resolve doubts in favor of the jury's verdict. Cf. *United States v. Kelley*, 301 F. App'x 172, 175 (3d Cir. 2008).
[4] Trial Tr. vol. 2, 46:6–46:8, June 12, 2007.
[5] *Id.* at 47:16–47:19.
[6] *Id.* at 48:13–54:20.
[7] *Id.* at 54:18.
[8] *Id.* at 59:11–60:19.
[9] *Id.* at 83:6–83:8.
[10] *Id.* at 94:6–96:17.
[11] Trial Tr. vol. 3, 48:21–48:25, June 13, 2007.
[12] *Id.* at 14:2–14:12.

that Ms. Mitchell gave him the .40 caliber weapon, as she testified. Mr. Lawrence was convicted of being a felon in possession of these three firearms in violation of 18 U.S.C. §922(g).[13]

After trial, this Court held a sentencing hearing at which it concluded by a preponderance of the evidence that Mr. Lawrence had, prior to his arrest for violating § 922(g), possessed or used a firearm in the aggravated assault of Justin Thompson.[14] Mr. Thompson was shot by someone wielding the .40 caliber Beretta that Ms. Mitchell bought for Mr. Lawrence, and a confidential informant told the police that Mr. Lawrence was the shooter. Moreover, one witness informed the police that immediately after the shooting someone drove off in a Dodge Magnum. At the conclusion of the sentencing hearing, the Court found that on the basis of Mr. Lawrence's criminal history—not challenged here—and sentencing enhancements based first on reckless endangerment during flight occurring during the high-speed car chase and second on the Thompson assault, the appropriate Sentencing Guidelines range was 97 to 121 months. Mr. Lawrence was sentenced to 98 months' imprisonment and a fine of $5,000.

Mr. Lawrence appealed, raising only two sentencing issues not relevant here.[15] The Third Circuit affirmed, and Mr. Lawrence now seeks relief pursuant to § 2255, raising numerous claims that his constitutional and statutory rights have been violated. In brief, he alleges that he was denied effective assistance of trial and appellate counsel in violation of the Sixth Amendment, that his right to a speedy trial was violated, that his sentence was wrongly enhanced because of the Thompson assault, and that the trial Court wrongly admitted evidence that Mr. Lawrence had committed crimes not charged in the indictment.

---

[13] He was acquitted of the fourth count; the jury acquitted him of possessing a revolver found in the glove compartment of the car he drove in his flight from the police.
[14] Doc. No. 152, p. 1.
[15] *United States v. Lawrence*, 402 F. App'x 699, 700–01 (3d Cir. 2010).

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner serving a sentence in federal custody may petition the court which imposed the sentence to vacate, set aside, or correct the sentence by asserting that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."[16] Relief under AEDPA is extraordinary and "generally available only to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure."[17]

## III. DISCUSSION

Mr. Lawrence alleges four grounds for granting his § 2255 motion. The first is that counts two through four of the superseding indictment were multiplicitous; the second, that his rights to a speedy trial were violated; the third, that he received ineffective assistance of trial and appellate counsel; the fourth, that the District Court committed various errors at trial and sentencing by hearing evidence related to bad acts of Mr. Lawrence not charged in the indictment.[18] Mr. Lawrence abandoned the first, second, and fourth grounds on direct appeal.[19] They are thus procedurally defaulted unless Mr. Lawrence can excuse the default by showing

---

[16] 28 U.S.C. § 2255(a). Both parties use the language of habeas corpus in their papers. While a motion under § 2255 is closely related to a petition for a writ of habeas corpus and the law governing such petitions is drawn from habeas law, there are some distinctions. The Court construes all references to the law of habeas corpus as meaning their analogues under the laws governing § 2255 petitions.
[17] *United States v. DeLuca*, 889 F.2d 503, 506 (3d Cir. 1989).
[18] Doc. Nos. 182, 187.
[19] Doc. No. 182 at 6–11.

both cause for the default and prejudice from it.[20] Mr. Lawrence argues that the cause for his default was that his counsel was ineffective for failing to preserve his claims. Therefore, the court analyzes his ineffective assistance of counsel claims first because unless Mr. Lawrence can prevail on any of those claims, he will not be entitled to relief on the defaulted grounds.

## A. *Ground Three: Ineffective Assistance of Counsel Claims*

Ineffective assistance of counsel claims are evaluated pursuant to the two-pronged test established by the Supreme Court in *Strickland v. Washington*.[21] Under *Strickland*, counsel is presumed to have acted reasonably and to have been effective unless a defendant can demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced defendant.[22] Counsel's performance is only deficient when it is "outside the wide range of professionally competent assistance."[23] Prejudice occurs upon a showing that there is a reasonable possibility that but for counsel's deficient performance the outcome of the underlying proceeding would have been different.[24] For example, "[a]n attorney cannot be ineffective for failing to raise a claim that lacks merit," because in such cases the attorney's performance is not

---

[20] *United States v. Frady*, 456 U.S. 152, 167–68 (1982). Defendant may also excuse procedural default by making a show of actual innocence. *House v. Bell*, 547 U.S. 518 (2006). No such claim is made here.

[21] 466 U.S. 668 (1984). Despite the procedural default doctrine, a defendant may raise a claim of ineffective assistance of counsel that was not raised at trial or on direct appeal. *Massaro v. United States*, 538 U.S. 500, 508–09 (2003) ("[F]ailure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255."). As the Third Circuit has explained: "[T]he preferred avenue to raise ineffective assistance claims is a collateral proceeding pursuant to 28 U.S.C. § 2255 because the district court is 'the forum best suited to developing the facts necessary to determining the adequacy of representation' before the trial court and has an 'advantageous perspective' to evaluate the overall effectiveness of trial counsel." *United States v. Vazquez*, No. 12-3648, 2013 WL 3814980, at *2 (3d Cir. July 24, 2013) (quoting *Massaro*, 528 U.S. at 504–06).

[22] *Id.* at 687.

[23] *Id.* at 690.

[24] *Lewis v. Horn*, 581 F.3d 92, 106-07 (3d Cir. 2009).

deficient and would not have affected the outcome of the proceeding.[25] Similarly, an ineffective assistance of counsel claim is not established upon the showing that an error had an effect on the proceedings; rather, a defendant must show that there is a reasonable probability that the outcome would have been different in the absence of such errors.[26] A court may address the prongs of *Strickland* in any order as both must be satisfied to entitle a defendant to relief.[27]

1.  *Claims Involving Trial Counsel*

    a. *Defendant's Claim that Trial Counsel Was Ineffective for Failing to Raise and Preserve the Issue that Counts Two, Three, and Four were Multiplicitous.*

Defendant asserts that Counts Two, Three, and Four as charged in the Superseding Indictment were multiplicitous and should have been charged in a single count, and thus trial counsel erred by failing to object. The Government argues that counsel was not ineffective because the counts were not multiplicitous.

"Multiplicity is the charging of a single offense in separate counts of an indictment."[28] The constitutional risk presented by a multiplicitous indictment is that the court will violate the Fifth Amendment's Double Jeopardy Clause by sentencing the defendant to multiple sentences for the same offense.[29] A determination of multiplicity rests on whether "the legislature intended to make separately punishable the different types of conduct referred to in the various counts."[30]

---

[25] *Singletary v. Blaine*, 89 F. App'x 790, 794 (3d Cir. 2004) (citing *Moore v. Deputy Comm'r of SCI-Huntingdon*, 946 F.2d 236, 245 (3d Cir. 1991)).

[26] *Strickland*, 466 U.S. at 694.

[27] *Strickland*, 466 U.S. at 700 (1984) ("Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim."); *Marshall v. Hendricks*, 307 F.3d 36, 115 n.49 (3d Cir. 2002) (noting that a court may choose "to undertake the prejudice prong first, as *Strickland* clearly allows").

[28] *United States v. Kennedy*, 682 F.3d 244, 254 (3d Cir. 2012) (citing *United States v. Carter*, 576 F.2d 1061, 1064 (3d Cir. 1978)).

[29] *Id.* at 255 (citing *Missouri v. Hunter*, 459 U.S. 359, 366 (1983)).

[30] *Id.* (quoting *United States v. Carter*, 576 F.2d 1061, 1064 (3d Cir. 1978).

In *United States v. Kennedy*,[31] the Third Circuit vacated the district court's decision to merge two counts of the indictment, both charging Defendant with being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1).[32] The district court reasoned that the counts were multiplicitous because both of the firearms were seized by the same group of police officers in the same operation from cars that were located "within eyeshot of one another."[33] The Third Circuit held, however, that whether a defendant's possession of firearms is considered a single offense is not based solely on their location at the time of seizure by law enforcement.[34] Where firearms are "acquired at different times," possession of such firearms may be charged in separate counts of the indictment under § 922(g) without being multiplicitous.[35] "What matters is the defendant's 'course of . . . treatment of the firearms,' which 'may not be viewed in a frozen, momentary state immediately prior to the seizure.'"[36]

Defendant's argument is based on a mistaken belief that the fact that the firearms were seized by Detective McDermott from the same location at the same time alone establishes a single offense.[37] Here, the evidence could have led the jury reasonably to determine that

---

[31] 682 F.3d 244 (3d Cir. 2012).

[32] *Id.* at 260.

[33] *Id.* at 250, 255.

[34] *Id.* at 255, 256 (citing *United States v. Mullins*, 698 F.2d 686, 687 (4th Cir. 1983)).

[35] *Kennedy*, 682 F.3d at 256 (quoting *United States v. Keen*, 104 F.3d 1111, 1118 n.11 (9th Cir. 1996)); *see also United States v. Hutching*, 75 F.3d 1453, 1459 (10th Cir. 1996) (holding that "simultaneous possession of multiple firearms generally constitutes only . . . one offense" under 922(g) "unless there is evidence that the weapons were stored in different places or acquired at different times").

[36] *Kennedy*, 682 F.3d at 255-56 (quoting *United States v. Mullins*, 698 F.2d 686, 687 (4th Cir. 1983)) (omission in original); *see also United States v. Marino*, 682 F.2d 449, 455, n.8 (3d Cir. 1982) (addressing multiplicity in a case involving 18 U.S.C. § 1202(a)(1)); *United States v. Hodges*, 628 F.2d 350, 351-52 (5th Cir. 1980) (same); *United States v. Rosenbarger*, 536 F.2d 715, 721 (6th Cir. 1976) (same); *United States v. Calhoun*, 510 F.2d 861, 869 (7th Cir. 1975) (same); *United States v. Kinsley*, 518 F.2d 665 (8th Cir. 1975) (same); *United States v. Wiga*, 662 F.2d 1325, 1336-37 (9th Cir. 1981) (same).

[37] *Kennedy*, 682 F.3d at 255-56

Defendant received the three guns that he was convicted of possessing at three different times: Dionne Mitchell purchased the .25 caliber Taurus for herself and the Beretta .40 caliber pistol for Mr. Lawrence,[38] while the Berretta 9mm pistol was registered to Eric Connor.[39] Each of these three firearms therefore appears from the record to have come into Mr. Lawrence's possession in a different way, allowing a separate count for the possession of each. Even if the argument that the possession charges should have been merged were colorable, it is too weak to support a claim that counsel was ineffective not to raise it because Mr. Lawrence has failed to adduce any case law in support of the argument.[40]

> b. *Defendant's Claim that Trial Counsel's Lack of Preparation Prejudiced Him.*

Defendant contends that his trial counsel failed to conduct pre-trial investigation and that his lack of preparation prejudiced Mr. Lawrence. He argues that a reasonable investigation would have uncovered a clerk at the Firing Line, where Ms. Mitchell bought the guns involved in Counts Three and Four of the indictment, who had never seen Mr. Lawrence.[41] But any failure to adduce this testimony can hardly be said to prejudice Mr. Lawrence. The clerk's statement that

---

[38] Trial Tr. vol. 3, 9:25–10:19, June 13, 2007.

[39] *Id.* at 14:12.

[40] The Government appears to argue that because merger of the charges would not have affected Mr. Lawrence's sentence under the sentencing guidelines, Mr. Lawrence would not have been prejudiced by a failure to object to multiplicity. Doc. No. 186 at 15. Mr. Lawrence correctly responds that a "separate *conviction*, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored." *Ball v. United States*, 470 U.S. 856, 865 (1985); *see also* Doc. No. 187 at 11–12. Such adverse consequences include the possibility of higher sentences under recidivist statutes, less likelihood of favorable determinations by parole boards, and the stigma of additional convictions. *Ball*, 470 U.S. at 865. At most, the fact that Mr. Lawrence would have received the same sentence even if the counts were merged could be evidence that counsel made a reasonable strategic decision not to argue multiplicity; conviction of three counts rather than one could nevertheless amount to prejudice under the second prong of *Strickland*. In any event, the point does not affect the outcome of this case because Mr. Lawrence has failed to demonstrate ineffectiveness.

[41] Doc. No. 187 p. 5–7.

he did not see Mr. Lawrence is tangential to his defense because it fails to contradict the evidence that Ms. Mitchell purchased two guns, which Mr. Lawrence later came to possess.

Defendant cites no evidence of counsel's lack of preparation beyond counsel's statement that he did not "feel comfortable . . . jumping right into a trial." Moreover, even if defense counsel were so inadequately prepared that he failed to meet *Stickland*'s "highly deferential"[42] standard of reasonableness, Mr. Lawrence fails to make any persuasive suggestion that he suffered prejudice. To the extent Defendant's claim is based on counsel being appointed on the eve of trial (at Defendant's request), the Court notes that trial counsel, who represented Defendant in earlier stages of the case until Defendant filed a motion to proceed *pro se* six months after he was indicted, served as back-up counsel at all times he was not serving as appointed counsel.[43] Thus, he was familiar with all aspects of Mr. Lawrence's case when he was appointed lead counsel just prior to trial.

### 2. Claims Involving Appellate Counsel

#### a. Defendant's Claim that Appellate Counsel was Ineffective for Failing to Raise the Argument that he was Deprived of his Right to a Speedy Trial.

Defendant argues that appellate counsel was ineffective for failing to assert a claim that Defendant's right to a Speedy Trial was violated. The Government cites the Court's prior order on this issue,[44] arguing that the Court's holding that there was no Speedy Trial Act violation in this case was not an error and therefore, appellate counsel's failure to raise the issue on appeal was not ineffective. The Government does not respond to the claim that Defendant's Sixth Amendment right to a Speedy Trial was violated, but as discussed below, the argument fails.

---

[42] *Strickland*, 466 U.S. at 689.
[43] Trial Tr. vol. 1, 34:24–36:4, June 11, 2007.
[44] *See* Doc. No. 100.

9

The Speedy Trial Act requires that a defendant's criminal trial begin "within seventy days from the filing date of the indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."[45] "Recognizing that criminal cases vary widely and that there are valid reasons for greater delay in particular cases, the act includes a long and detailed list of periods of delay that are excluded in computing the time within which trial must start."[46]

Relevant here is 18 U.S.C. § 3161(h)(1), which provides:

(h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:

(1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—

. . .

(D) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;

. . .

(H) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.

The Speedy Trial Act recognizes that there are certain cases in which disposition of a motion within 30 days or holding trial within 70 is not practicable. It includes a provision permitting "ends-of-justice" continuances. 18 U.S.C. § 3161(h)(7)(A) excludes from the 70 day period:

Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

As the Act puts it:

---

[45] 18 U.S.C. § 3161(c)(1).
[46] *Zedner v. United States*, 547 U.S. 489, 498 (2006).

No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

Here, the Indictment was filed on February 28, 2006,[47] and Defendant made his initial appearance before the Magistrate Judge assigned to the case on March 23, 2006.[48] This latter date begins the Speedy Trial Act clock.[49] The clock ran for five days until March 28, 2006, when the Government filed a Motion for Pretrial Detention,[50] and upon disposition of that motion the following day, the clock began to run again.[51] On April 3, 2006, the Court scheduled trial for May 23, 2006.[52] On May 18, 2006, 50 days of included time having elapsed, the Court granted an ends of justice continuance at defense counsel's request beginning a period of excludable time.[53] Beginning on this date, overlapping periods of excludable time ran until the time of trial, June 12, 2007, as a result of Defendants numerous pretrial motions, which were continuously filed with at least one pending at all times.[54]

---

[47] Doc. No. 1.

[48] Doc. No. 4.

[49] 18 U.S.C. § 3161(c)(1).

[50] Doc. No. 7.

[51] *See* Doc. Nos. 9, 14.

[52] Doc. No. 18.

[53] Doc. Nos. 19–21.

[54] On July 21, 2006, Defendant filed a *pro se* Motion to Dismiss the Indictment and, on October 3, 2006, a Motion to Remove/Dismiss Appointed Counsel and Proceed *Pro Se*, both of which began another period of excludable time. Doc. Nos. 23, 26. These latter two periods of excludable time ended when the Court ruled on both motions by Order dated October 11, 2006, but the continuance granted by the Court's May 18, 2006 Order continued the period of excludable time. Doc. No. 28. On October 17, 2006, Defendant, now proceeding *pro se* with prior counsel as backup counsel, filed a Motion to Suppress and a Motion for Return of Seized Property, beginning yet another period of excludable time. *See* Doc. Nos. 30, 31. On October 27, 2006, the Court granted another "ends of justice" continuance of the trial in light of the pending pretrial motions. Doc. No. 42. On November 22, 2006, Defendant filed an additional two

Thus, at the time of trial, less than 60 days of included time had elapsed on Defendant's Speedy Trial clock. Consequently, and consistent with this Court's Order of June 13, 2007, there was no Speedy Trial Act violation in this case, and appellate counsel's failure to raise the issue on appeal was not ineffective.[55]

Defendant also asserts that his Sixth Amendment right to a speedy trial was violated.[56] In general, the Speedy Trial Act provides defendants with greater protection than the Speedy Trial Clause, but the analyses are different and not completely overlapping. It does not follow from the

---

motions. Doc. No. 43, 44. On December 4, 2006, Defendant filed a Motion for an Extension of time to file more motions. Doc. No. 48. By Order dated December 6, 2006, the Court entered an order ruling on several of Defendant's pending motions and granting Defendant an additional ten days to file pretrial motions. Doc. No. 49. The Government filed its Motion in Limine on December 18, 2006. Doc. No. 53. At this time, pretrial motions and the most recent "ends of justice" continuance created a period of excludable time which had been running since May 18, 2006. The period of excludable time continued through the filing of additional motions by Defendant and a Superseding Indictment by the Government and continued until the time of trial. *See, e.g.*, Doc. Nos. 59, 60, 70, 78, 90, 94, 97, 98.

[55] Moreover, the three counts on which Defendant was convicted were charged for the first time in the Superseding Indictment, which was filed on April 10, 2007. *See* Doc. No. 70. Defendant's trial began on June 12, 2007, only 63 days later. *See* Doc. No. 108. Thus, even discounting the fact that pretrial motions were consistently pending during these 63 days, there is no Speedy Trial Act Violation with respect to the crimes for which Defendant was convicted, assuming these three subsequent charges are not charges "required to be joined" in the same indictment. *See United States v. Lattany*, 982 F.2d 866, 873 (3d Cir. 1992) ("When subsequent charges are filed in a supplemental indictment that charge the same offense as the original indictment or one required to be joined therewith, as in this case, the speedy trial period commences with the original filing. If the subsequent filing charges a new offense that did not have to be joined with the original charges, then the subsequent filing commences a new, independent speedy trial period."). Because the Court finds that there is no Speedy Trial Act violation even when using the date of the original indictment, it need not reach a conclusion on the issue of whether Counts Two through Four are crimes "required to be joined" and therefore relate back to the original indictment for Speedy Trial Act purposes.

[56] The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." It is not entirely clear from his submissions whether Mr. Lawrence alleges a violation of both the Speedy Trial Act and the Speedy Trial Clause of the Sixth Amendment. His argumentation in his § 2255 motion focuses on the Act, but on page 7 that motion Mr. Lawrence writes, "Defendant [sic] Sixth Amendment right to a [s]peedy trial was violated." Doc. No. 182. Because pro se motions are to be broadly construed and in the interest of completeness, the court will address the whether the Sixth Amendment's speedy trial guarantee was violated.

fact that the Speedy Trial Act was satisfied that the Speedy Trial Clause was, too, but a violation of the Clause without a violation of the Act is rare.[57]

The Sixth Amendment's "speedy-trial right is amorphous, slippery, and necessarily relative."[58] It entails a threshold inquiry into the length of the delay between accusation and trial, which, if long enough, requires balancing the factors enumerated by *Barker v. Wingo*.[59] *Barker* and later case law do not specify a length of delay that clears the threshold; instead, a court must decide whether the delay was long enough to give rise to "presumptive prejudice," which "when used in this threshold context simply 'marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry.'"[60] The delay between indictment and trial in this case was fifteen and a half months, longer than other delays that the Third Circuit has found "sufficiently lengthy to warrant an inquiry into the other facts"[61] and how they weigh in the *Barker* balance.

The remaining *Barker* factors are "the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."[62] The factors are related and occasionally overlapping, and the Third Circuit has held that "[t]he most important factor is prejudice."[63]

The reason for the delay in this case is primarily the pretrial motion practice that Mr. Lawrence himself engaged in and continuances to allow him to prepare for his case.[64] Little of

---

[57] *See, e.g., United States v. Loud Hawk*, 474 U.S. 302, 305 (1986) ("The more stringent provisions of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, have mooted much litigation about the requirements of the Speedy Trial Clause as applied to federal prosecutions.").

[58] *Vermont v. Brillon*, 556 U.S. 81 (2009).

[59] 407 U.S. 514 (1972).

[60] *Hakeem v. Beyer*, 990 F.2d 750, 759 (3d Cir. 1993) (quoting *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)).

[61] *Id.* at 760 (collecting cases).

[62] *Barker*, 407 U.S. at 530.

[63] *Hakeem*, 990 F.2d at 759.

the delay is attributable to the court[65] or the government, and there is no indication that the government engaged in any deliberate attempt to slow proceedings down.[66]

Second, this Court must consider Mr. Lawrence's assertion of his right. The first continuance in this case was granted on May 18, 2006, to allow Mr. Lawrence to meet with his attorney.[67] On May 19, Mr. Lawrence filed another motion to continue, which he withdrew on May 31.[68] On July 21, Mr. Lawrence moved to dismiss the indictment "based on failure to timely indict," and he withdrew this motion on October 13.[69] On June 7, 2007, Mr. Lawrence moved to continue the trial; on the 11th, the motion was granted, and one day later than that, he moved to dismiss for a Speedy Trial Act violation.[70] Furthermore, on June 11, Mr. Lawrence orally moved for both a continuance and a dismissal for violation of the Speedy Trial Act.[71] Although Mr.

---

[64] Doc. No. 19 (order to continue to allow Mr. Lawrence to meet with his attorney); Doc. No. 26 (motion to proceed pro se); Doc. No. 30 (motion to suppress); Doc. No. 31 (motion to return property); Doc. No. 36 (motion for discovery); Doc. 43 (motion in limine); Doc. No. 43 (motion to amend motion to suppress); Doc. No. 48 (motion for extension of time); Doc. No. 50 (motion for extension of time); Doc. No. 55 (memorandum of law in support of motion to suppress); Doc. No. 58 (supplemental memorandum of law); Doc. No. 59 (motion for additional discovery); Doc. No. 60 (motion for appropriate relief resulting from grand jury abuse); Doc. No. 77 (letter requesting expert witness and transcripts); Doc. No. 78 (amended omnibus motion for appropriate relief from grand jury abuse); Doc. No. 86 ("First" motion in limine); Doc. No. 90 (omnibus motion to dismiss indictment for lack of jurisdiction); Doc. No. 94 (motion to continue trial); Doc. No. 97 (motion to dismiss for violation of Speedy Trial Act); Doc. No. 98 (request to charge).

[65] Any delay in resolving any particular motion by Mr. Lawrence was due at least in part to the fact that Mr. Lawrence filed at least fifteen motions in the twelve months before trial. On average, the court resolved more than one of his motions per month.

[66] Delay by the prosecution is "improper 'to gain some tactical advantage over [defendants] or to harass them.'" *Barker v. Wingo*, 407 U.S. 514, 531 n.32 (1972) (quoting *United States v. Marion*, 404 U.S. 307, 325 (1971).

[67] Doc. No. 19.

[68] Doc. Nos. 20, 22.

[69] Doc. No 29.

[70] Doc. Nos. 94–97.

[71] Trial Tr. vol. 1, 14–21, June 11, 2007. Contrary to the Government's assertion, it is of no moment that Mr. Lawrence argues in his § 2255 petition both that his speedy trial right was

Lawrence asserted his speedy trial right relatively early in his criminal case, he equivocated throughout his pretrial process on the subject of whether the case was moving too slowly or too quickly. In view of his repeated requests for continuances, the Court finds that the manner of Mr. Lawrence's assertion of his right weighs against him, notwithstanding how early he raised the issue.

Finally, the Court must consider the most important factor, namely prejudice to the defendant from the delay. As discussed above, Mr. Lawrence himself sought most of the delay that arose in this case. The delay allowed him to confer with counsel and prepare his case. The continuances were granted to allow him to cope with the difficulties of representing himself while incarcerated. No witnesses disappeared or showed signs of faded memories because of the delay. And Mr. Lawrence alleges no prejudice beyond the unsupported statement that he experienced "anxiety, loss of sleep, loss of appetite, and interference with personal relationship."[72]

Because all three *Barker* factors weigh against Mr. Lawrence, his counsel was not ineffective by declining to raise a Speedy Trial Clause claim on appeal.

      b. *Defendant's Claim that Appellate Counsel was Ineffective for Failing to Raise the Argument that the Court Allowed the Indictment to be Constructively Amended.*

Defendant contends that "the proofs adduced at trial varied from the allegations in the indictment to such a degree that they constituted a prejudicial variance from the indictment."[73] Relatedly, Defendant objects to the jury instructions and the admission of certain evidence in this case, arguing that the Court "committed plain error when it charge[d] the jury on the element of

---

violated and that the court abused its discretion in refusing to grant a continuance. Inconsistent claims are permitted. *See* Rules Governing § 2555 Cases R. 12, Fed. R. Civ. P. 8(d)(3).

[72] Doc. No. 187 at 15.

[73] Doc. No. 187 at 7.

prior conviction and of possession"[74] and that it constructively amended the indictment to include charges of "flight and reckless endangerment."[75] According to Defendant, the Government "improperly introduced[] evidence of: Flight, Reckless Endangerment, burglary, Straw buying, Auto Accident, Fleeing police, Traffic violation, which prejudiced defendant's substantial rights."[76] Defendant asserts that trial counsel objected to "this prejudiced variance" and to "the constructively amended jury instructions," and that there is no "plausible strategy that appellate counsel can state which prevented her from not raising those preserve claims."[77]

While the Court recognizes that "evidence, arguments, or a district court's jury instructions," can result in a constructive amendment to the indictment, they do so only where the evidence, argument, or instruction "broaden[s] the possible bases for conviction from that which appeared in the indictment."[78] Where exhibits offered by the Government explain the counts charged in the indictment, such explanation does not amend the indictment where the explanation does not alter or expand the bases for conviction. The "key inquiry is whether the defendant was convicted of the same conduct for which he was indicted."[79]

Contrary to Defendant's assertions, all the evidence that could be seen as implicating Defendant in crimes other than possession of firearms was directly relevant to proving the charged offenses and was introduced with a limiting instruction as necessary. For example, evidence was admitted that he fled from the police when they attempted to arrest him. This evidence was admitted to show consciousness of guilt. The auto accident, traffic violation,

---

[74] Doc. No. 182 at 10.
[75] Doc. No. 187 at 18.
[76] *Id.*
[77] *Id.* at 8.
[78] *United States v. McKee*, 506 F.3d 225, 229 (3d Cir. 2007).
[79] *United States v. Vosburgh*, 602 F.3d 512 (3d Cir. 2010) (quoting *United States v. Daraio*, 445 F.3d 253, 260 (3d Cir. 2006) (internal quotation marks omitted)).

reckless endangerment, and flight were all part of the same act of fleeing police, all introduced by the Government to help establish Mr. Lawrence's state of mind.[80]

Similarly, evidence of burglary was arguably introduced (though only in an attenuated sense) because two of the guns at issue were registered to Eric Connor.[81] However, this evidence was not admitted to show that Mr. Lawrence burgled Mr. Connor, but to show that he acquired these guns in different ways and thus each was a separate offense. "Straw Buying" is also just one inference from Mr. Lawrence's girlfriend's testimony that Mr. Lawrence ended up possessing the gun she bought for herself.[82] But Ms. Mitchell's purchase was also relevant to show that Mr. Lawrence acquired the two guns in different ways: the jury could have reasonably concluded that Ms. Mitchell purchased one for him and that he took the other from her.

Because well settled case law establishes that evidence of flight from police can be used to establish consciousness of guilt,[83] especially when the jury is provided with a limiting instruction, it was not ineffective for counsel to fail to challenge admission of such evidence on appeal. The additional challenged evidence admitted here was directly relevant to show how Mr. Lawrence came into possession of the weapons. Such a showing was necessary to establish facts

---

[80] Trial Tr. vol. 4, 83:7–83:25, June 14, 2007.

[81] *Id.* at 23:23–24:4, 32:20–33:25.

[82] *Id.* at 28:6–28:13.

[83] E.g., *United States v. Green*, 25 F.3d 206, 210 (3d Cir. 1994) ("We have held in the past that '[e]vidence of a defendant's flight after a crime has been committed is admissible to prove his consciousness of guilt."); *Maynard v. Gov't of Virgin Islands*, 392 F. App'x 105, 119–20 (3d Cir. 2010); *United States v. Fisher*, 306 F. App'x 733, 735 (3d Cir. 2009) ("It is well established that evidence of flight is admissible as evidence of consciousness of guilt."); *United States v. Katzin*, 94 F. App'x 134, 138 (3d Cir. 2004) ("We have consistently held that evidence of a defendant's flight after a crime has been committed is admissible to prove the defendant's consciousness of guilt.") (internal quotation marks omitted); *United States v. Terry*, 1997 WL 438831, at *4 (E.D. Pa. 1997) ("Flight evidence is admissible either as circumstantial evidence of guilt, or as proof of consciousness of guilt.") (citations omitted); *Burton v. Rozum*, 2006 WL 782858 , at *9 (E.D. Pa. 2006).

supporting the separate charges in the indictment, and it was not ineffective to decline to appeal admission of this evidence.

    c. *Defendant's Claim that Appellate Counsel was Ineffective for Failing to Raise the Argument that the Court Committed Error when it Excluded Evidence of Untruthfulness of a Government Witness.*

Defendant argues that appellate counsel was ineffective for failing to contest the trial Court's exclusion of evidence that one of the Government's trial witnesses, Detective Joseph McDermott, had verbally and physically abused civilians in two incidents in the 1990s. The court ruled that those incidents did not demonstrate a character for untruthfulness and that they were of no probative value since the most recent one occurred a decade before trial.[84] Mr. Lawrence has presented the Court with no reason to revisit that ruling, and the Court now holds that it was not ineffective to fail to contest the ruling on appeal, because the evidence was correctly deemed inadmissible.

Mr. Lawrence cites *Brady*[85] and *Bagley*[86] in an attempt to support his argument, but these cases are not relevant. They and other cases in the same line place a duty on the prosecution to disclose material evidence favorable to the accused, including impeachment evidence. They do not make all evidence favorable to the accused *admissible*. The admissibility of evidence to impeach a witness is governed by the Federal Rules of Evidence, specifically Rule 608. The complaints and the results of the investigation of those complaints against Detective McDermott were disclosed to Mr. Lawrence, and he has made no proper allegation of a *Brady* violation, even construing his complaint liberally, as the Court must.

    d. *Defendant's Claim that Appellate Counsel was Ineffective for Failing to Raise the Argument that the Court Erred in Applying the Four Level Enhancement Pursuant to § 2K2.1(b)(6) at Sentencing.*

---

[84] Doc. No. 100, n.1.
[85] *Brady v. Maryland*, 373 U.S. 83 (1963).
[86] *United States v. Bagley*, 473 U.S. 667 (1985).

Defendant argues that the Court erred in applying, and counsel was ineffective in not pursuing on appeal an objection to the application of, a four-level sentencing enhancement pursuant to § 2K2.1(b)(6) based on a finding that Defendant used the firearm described in Count Four in connection with another felony—the aggravated assault of Justin Thompson. The Government disagrees, arguing that it proved, by a preponderance of the evidence, that the firearm Defendant possessed as charged in Count Four was used in connection with the Thompson assault.

Defendant does not dispute that the Thompson assault was a felony committed with a firearm. Rather, Defendant's argument appears to be that the assault was not "relevant conduct" within the meaning of USSG § 1B1.3 and therefore should not have been considered at the sentencing hearing.[87] That provision states in relevant part that *"Unless otherwise specified . . . specific offense characteristics . . . shall be determined on the basis of . . . acts . . . caused by the defendant . . . that occurred during the commission of the offense of conviction . . . and (4) any other information specified in the applicable guideline."*[88] The applicable guideline is USSG § 2K2.1(b)(6)(B), which authorizes a four-level increase if the defendant "used or possessed *any* firearm or ammunition in connection with *another* felony offense."[89] "Another felony offense" is defined as any offense other than the offense of conviction "punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained."[90] It would be absurd to require the Government to prove the other felony offense of 2K2.1(b)(6)(B) only by actions related to the offense of conviction. Information offered to prove

---

[87] Doc. No. 187 at 10.
[88] Emphasis added.
[89] Emphasis added.
[90] USSG § 2k2.1 n.14(C).

the other felony relevant to the sentencing enhancement is "information specified"[91] in § 2K2.1(b)(6)(B) and was therefore properly considered by the sentencing Court.[92]

To the extent that Defendant contends that his sentence was enhanced in error, the Court first notes that a § 2255 motion is not an appropriate vehicle to relitigate facts decided at a sentencing hearing, all the less so when the challenge comes by way of a claim of ineffective assistance of counsel. Moreover, Defendant's claim is without merit. The Government proved by a preponderance of the evidence[93] at the sentencing hearing that Mr. Lawrence used a firearm in connection with the aggravated assault of Justin Thompson. The proof offered at that hearing consisted of the testimony of three police detectives and one ballistics expert. Their testimony, coupled with the facts adduced at trial, tended to show that Dionne Mitchell purchased a .40 caliber Berretta; that she stored it in a closet that only she and Mr. Lawrence had access to; that that gun was used to shoot Justin Thompson; that immediately after the shooting, someone drove off in a Dodge Magnum;[94] and that Mr. Lawrence had rented a Dodge Magnum. To be sure, these facts do not prove beyond any speculative doubt that Defendant shot Mr. Thompson, but they do provide sufficient basis for the Court to conclude that Defendant more likely than not committed another felony with a firearm, meriting a four-level enhancement pursuant to § 2K2.1(b)(6). Thus, appellate counsel was not ineffective in failing to raise the issue on appeal.

---

[91] USSG § 1B1.3.

[92] Cf. *United States v. Jones*, 514 F. App'x 229, 231 & n.1 (3d Cir. 2013) (affirming sentence enhanced in part passed on an uncharged shooting proven by a preponderance of the evidence at a sentencing hearing).

[93] *United States v. Grier*, 475 F.3d 556, 561 (3d Cir. 2007) (en banc) ("Under an advisory Guidelines scheme, district courts should continue to make factual findings by a preponderance of the evidence and courts of appeals should continue to review those findings for clear error.").

[94] Sentencing Tr. at 31 (Apr. 30, 2008).

Defendant also makes a passing reference to *United States v. Booker*[95] and argues that "the application of § 2K2.1(d)(6) violated his Sixth Amendment right to have facts which enhance his sentence determined beyond a reasonable doubt by a jury." However, *Booker* held only that the Sixth Amendment requires that facts (other than the fact of a prior conviction) which enhance a sentence *beyond the statutory maximum* must be admitted by the defendant or proved to a jury beyond a reasonable doubt.[96] The statutory maximum sentence for a violation of 18 U.S.C. § 922(g) at the time of Mr. Lawrence's crime and of his sentencing was imprisonment for ten years (120 months) and a fine of $250,000 on each count.[97] Mr. Lawrence was sentenced to 98 months of imprisonment on each count, the sentences to run concurrently, and a fine of $5,000 for all three counts together.[98] *Booker* is therefore not implicated.

### e. *Defendant's Claim Regarding Confidential Informant's Identity*

Defendant argues that the Court erred in refusing to order an in camera disclosure of the identity of a confidential informant "whose tip was basis for the arrest."[99] Construed liberally, the motion argues that counsel was ineffective for failing to preserve the issue on appeal that the informant was never disclosed. However, since the denial of Mr. Lawrence's request to reveal the informant's identity was proper, it was not ineffective to drop this argument on appeal.

---

[95] 543 U.S. 220 (2005).

[96] *United States v. Booker*, 543 U.S. 220, 244 (2005). *Booker* clarified that the Supreme Court's holdings in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington* 542 U.S. 296 (2004) that facts other than a prior conviction that increased a criminal defendant's sentence beyond a statutory maximum are subject to the Sixth Amendment's Jury Clause apply to the federal sentencing guidelines. *Booker* also rendered the guidelines advisory.

[97] 18 U.S.C. § 924(a)(2) (last amended in relevant part by Pub. L. 103-159 (Nov. 30, 1993)); 18 U.S.C. § 3571 (last amended by Pub. L. 100-185 (Dec. 11, 1987)).

[98] Sentencing Tr. at 131, 133:5–6 (Apr. 30, 2008).

[99] Doc. No. 187 at 22.

In general, the government is not obligated to disclose the identity of informants.[100] Informants are confidential in order to safeguard the flow of information to law enforcement, thereby protecting the public.[101] However, the government has a duty to disclose where (1) the disclosure would be "relevant and helpful to the defense . . . or is essential to a fair determination of a cause [of action],"[102] and (2) the individual's right to prepare his defense outweighs the public's interest in protecting the flow of information.[103] This second prong depends on the circumstances of a particular case, including factors such as "the crime charged, possible defenses, and the possible significance of the informer's testimony."[104] Possible reasons militating in favor of disclosure are to allow the defendant to call the informant as a witness or to conduct his or her deposition before the trial.[105]

The defendant bears the burden of proving the need for disclosure,[106] and mere speculation or hope that disclosure would be helpful to the defense is not sufficient.[107] In order to demonstrate that his interest in a fair trial outweighs the public's interest in protecting information, the defendant must show at least some of the following: (a) the informant has information that is significantly relevant, material, and exculpatory to the defense;[108] (b) the

---

[100] *Roviaro v. United States*, 353 U.S. 53, 59 (1957).
[101] *Id.*
[102] *Id.* at 60–61.
[103] *Id.* at 62.
[104] *Id.*
[105] *Id.* at 64.
[106] *United States v. Gatlin*, 613 F.3d 374, 380 (3d Cir. 2010); *United States v. Blevins*, 960 F.2d 1252, 1258 (4th Cir. 1992); *United States v. Amador-Galvan*, 9 F.3d 1414, 1417 (9th Cir. 1993).
[107] *Gatlin*, 613 F.3d at 380; *Amador-Galvan*, 9 F.3d at 1417.
[108] *See Roviaro*, 353 U.S. at 63-64 (holding that the informant's testimony was highly relevant and possibly helpful to the defense because he was: 1) the one material witness to the crime, 2) helped to set up and participated in the drug transaction for which the defendant was arrested, opening up the possibility that entrapment occurred, and 3) the only witness who could have testified to any lack of the offense's mental state requirement of knowledge on the part of the defendant); *United States v. Sanchez*, 988 F.2d 1384, 1392 (5th Cir. 1993) (holding that

defense will not be able to speak to the informant otherwise;[109] (c) the informant actively participated in the crime for which the defendant is charged;[110] and (d) the government does not have a significant interest in keeping the informant's identity confidential.[111]

Defendant's arguments here fall far short of establishing a need to reveal the identity of the informant. He argues only that he made "a substantial showing of informant untruthfulness" and "that the informant was a <u>material</u> part in bringing about defendant's arrest."[112] These bare allegations are insufficient to sustain Defendant's burden of overcoming the presumption against disclosure. Defendant fails to support the allegation that the informant was untruthful and that disclosure of the informant's identity would have been so helpful to Defendant that his need outweighed the public interest in the free flow of information to law enforcement. Because Defendant has failed to articulate that he could have prevailed on this argument, the Court cannot hold that it was ineffective for counsel to fail to preserve it on appeal.

---

disclosure was not required where the informant would only further implicate the defendant in the crime); *United States v. Jenkins*, 4 F.3d 1338, 1341 (6th Cir. 1993) (holding that disclosure was not required where the informant's testimony would not help the defense); *United States v. Bender*, 5 F.3d 267, 269-70 (7th Cir. 1993) (holding that disclosure was not required where the informant's testimony would have little significance for the defense).

[109] *See United States v. McDonald*, 935 F.2d 1212, 1218 (11th Cir. 1991) (holding that disclosure was not required where the informant refused the defense counsel's interview request because the defense counsel was also able to call the informant as a witness).

[110] *See Sanchez*, 988 F.2d at 1391-92 (holding that disclosure was not required where the informant simply observed the crime due to riding in the officer's car); *Bender*, 5 F.3d at 270 (holding that disclosure was not required where the informant merely 'tipped off' the police).

[111] *See Sanchez*, 988 F.2d at n. 51 (holding that disclosure was not required because the defendant, as a Mafia member, posed a "grave danger" to the informants and their families); *Bender*, 5 F.3d at 270 (recognizing that the public has a strong interest in maintaining the confidentiality of an informant's identity where disclosure would compromise ongoing criminal investigations).

[112] Doc. No. 187 at 22.

**B.    *Procedural Default (Grounds One, Two, and Four)***

The procedural default doctrine bars a § 2255 Defendant from raising claims on collateral

review that could have been raised at trial or on direct appeal but were not.[113] Claims that "can

be fully and completely addressed on direct review based on the record created" at the trial level

must be raised on appeal or will be deemed defaulted.[114] Claims that have not been raised at trial

or on appeal, though they could have been, are procedurally defaulted unless defendant can show

(1) "cause" for the default, and (2) that "actual prejudice" resulted therefrom.[115] Thus, where a

defendant alleges that counsel was ineffective for failing to raise particular claims, procedural

default does not bar a court from considering whether counsel's failure to raise them was an

error. The substantive merits of the claims are relevant, since declining to raise claims that have

scant likelihood of success is a characteristic of effective rather than ineffective lawyering.[116]

The Government argues that Grounds One, Two, and Four are barred as procedurally

defaulted because Defendant failed to raise the issues contained therein on direct appeal and has

failed to show actual prejudice. The Court agrees. Defendant raised only two issues on appeal,

both involving sentencing.[117] He did not raise any of the claims asserted in Grounds One, Two,

and Four on appeal. He argues that the cause for his default is ineffective assistance of trial and

appellate counsel. However, for the reasons discussed above concerning his freestanding

---

[113] *Bousley v. United States*, 523 U.S. 614, 622 (1998).

[114] *Id.*

[115] *See supra*, n.20.

[116] *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996) ("Appealing losing issues 'runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions.'") (quoting *Jones v. Barnes*, 463 U.S. 745, 753 (1983)).

[117] *See United States v. Lawrence*, No. 08-2536, Br. for Appellant at 2; *Lawrence*, 402 F. App'x 699 (3d Cir. 2010) (addressing (1) the Court's application of a two-level enhancement for reckless endangerment during flight to his base offense level, and (2) the Court's consideration of rehabilitation during sentencing, and affirming this Court on both grounds). Defendant's current argument that this Court wrongly enhanced his sentence pursuant to U.S.S.G. § 2K2.1(b)(6) is different from his appeal of the sentencing enhancement under § 3C1.2.

ineffective assistance of counsel claims, he has failed to show that any of his counsel fell below an objective standard of reasonableness. For the same reasons that he is not entitled to relief on the basis of ineffective assistance of counsel, counsel's performance does not excuse his procedural default. Consequently, the Court will deny the Motion as to Grounds One, Two, and Four as procedurally defaulted.

## IV. CONCLUSION

For the foregoing reasons, Mr. Lawrence's § 2255 motion is denied. Because the record as a whole conclusively shows that Mr. Lawrence is not entitled to relief, his request for a hearing is also denied.[118] And because Mr. Lawrence has made no substantial showing that reasonable jurists could debate whether this Motion should be resolved differently, his request for a certificate of appealability is also denied.[119]

---

[118] *United States v. Dawson*, 857 F.2d 923, 927 (3d Cir. 1988).
[119] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).